UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re DORAL FINANCIAL CORP. SECURITIES LITIGATION | : Master Docket No. 1:05-md-01706-RO<br>: (Civil Action No. 1:05-cv-04014-RO)<br>:<br>: LEAD PLAINTIFF'S AND LEAD |
| This Document Relates To:<br><br>ALL ACTIONS. | : DERIVATIVE PLAINTIFF'S<br>: MEMORANDUM OF LAW IN SUPPORT<br>: OF MOTION FOR PRELIMINARY<br>  APPROVAL OF SETTLEMENT |

**I.    PRELIMINARY STATEMENT**

Lead Plaintiff West Virginia Investment Management Board (the "Lead Plaintiff") and Lead Derivative Plaintiff Rosenbaum Capital, LLC ("Lead Derivative Plaintiff") respectfully submit this memorandum in support of their motion for an order granting preliminary approval of the proposed partial Settlement of the above-captioned securities class actions ("Proposed Partial Settlement") and the settlement of the derivative actions ("Proposed Derivative Settlement" collectively with the Proposed Partial Settlement, the "Settlement").  As detailed herein, the Proposed Partial Settlement consists of $129,000,000[1] in cash plus the adoption by Doral Financial Corporation ("Doral" or the "Company") of extensive corporate governance enhancements.  The Proposed Partial Settlement covers the following defendants: Doral, Salomon Levis, Zoila Levis, Ricardo Melendez, Mario Levis, David Levis, Sr., Richard F. Bonini, Edgar M. Cullman, Jr., Efraim Kier, Harold D. Vicente, John B. Hughes and Peter A. Hoffman (the "Settling Defendants").  The Proposed Derivative Settlement includes the Settling Defendants and Defendants John L. Ernst and Fernando Rivera Munich (collectively, the "Settling Derivative Defendants").  The Lead Plaintiff continues to pursue its case against PriceWaterhouseCoopers LLP ("PwC"), which served as Doral's auditors throughout the Class Period.[2]

This litigation centers on an accounting fraud at Doral.  In its complaint, which was the product of an exhaustive pre-filing investigation, Lead Plaintiff alleged that, throughout the Class Period, Doral issued a series of materially false and misleading statements concerning the Company's reported financial results and financial statements.  In particular, Lead Plaintiff alleged

---

[1]  The monetary breakdown is discussed further herein, *see infra*, at page 7.

[2]  PwC has moved to dismiss the Consolidated Amended Complaint (the "CAC") and that motion has been fully briefed.

that Defendants engaged in a fraudulent scheme whereby Doral improperly characterized its transfers of mortgages to other banks as a "sale" and then recognized a gain on that sale, thereby reporting artificially inflated financial results and materially false and misleading financial statements which violated Generally Accepted Accounting Principles ("GAAP"). Doral also inflated the value of certain assets that it retained on its balance sheet when it "sold" its mortgages. Ultimately, as alleged in the CAC, Doral has admitted that its financial statements issued during the Class Period were materially false and misleading and has restated its financial statements and erased hundreds of millions of dollars of revenue and income that it previously reported to investors. The Lead Derivative Plaintiff has alleged that the Settling Derivative Defendants breached their fiduciary duties owed to Doral's shareholders by, among other things, engaging in the fraudulent scheme alleged in the CAC, thereby exposing Doral to regulatory and governmental investigations and the securities class action litigation.

    The Settlement is the result of extensive and protracted mediation between the parties.[3] The mediation spanned more than five months and during that time, Lead Counsel and Counsel for Defendants met repeatedly to discuss the strengths and weaknesses of Plaintiffs' claims and the regulatory and financial condition of Doral. During the mediation, Defendants provided detailed internal financial information about Doral and its ongoing operations. Defendants further provided internal information about the regulatory regime that Doral was operating under and the strict limitations placed on the operation of its business by the federal banking authorities. Lead Plaintiff retained experts in valuation and banking regulatory matters to assist it in evaluating the information provided by Defendants and to assess the ability of Doral, given its financial condition and

---

[3] The mediation was conducted before the Honorable Daniel Weinstein (Ret.) of JAMS.

- 2 -

regulatory constraints, to withstand a judgment in this case. At the end of the mediation process, the parties arrived at the Settlement, which is now being put before the Court for preliminary approval.

Lead Plaintiff respectfully submits that the Settlement represents an outstanding result for it and the Class. The Settlement creates a cash fund of $129 million for Lead Plaintiff and the Class and also requires Doral to adopt numerous corporate governance provisions which will make Doral a sounder company going forward. As detailed further herein, Doral is in precarious financial condition which limited the assets it had available to pay in a settlement of this litigation. Among other things, the Company has been negatively impacted by the slumping housing market in Puerto Rico, has had to materially increase its provisions for loan losses and it has a $625 million bond payment due on July 20, 2007, which it does not have the funds for. Moreover, due to limitations placed on Doral by federal banking authorities, the Company's ability to use the assets of its banking subsidiaries to satisfy a judgment is highly constrained, if not eliminated completely. Under these circumstances, Lead Plaintiff respectfully submits that a $129 million cash fund is an exceptional result.[4]

By this motion, the parties seek preliminary approval of the Settlement and in connection therewith entry of an order providing for approval of the form of notice describing the terms of the Settlement; Class Members' and Shareholders' rights with respect thereto; the proposed release of claims; the proposed Plan of Allocation of settlement proceeds to be distributed to Class Members; the request for an award of attorneys' fees and reimbursement of expenses to Lead Counsel and Lead Derivative Counsel; and the procedures for filing Proof of Claim forms. The parties also request that

---

[4] As of May 1, 2007, Doral had a market capitalization of approximately $145 million. Accordingly, the cash to be paid in the Proposed Partial Settlement, $129 million, is 88% of the present market capitalization of the Company.

the Court set a date for the hearing to consider final approval of the Settlement and the foregoing matters.

For purposes of this motion for preliminary approval, the issue before the Court is whether the proposed settlements are within the range of what might be approved as fair, reasonable and adequate in order to justify mailing and publishing notice of the Settlement, and scheduling a final hearing.  "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations . . . and falls within the range of possible approval, preliminary approval should be granted."  *In re NASDAQ Mkt.-Makers Antitrust Litig.*, MDL No. 1023, 1997 U.S. Dist. LEXIS 20835, at *22 (S.D.N.Y. Dec. 31, 1997).  The Court is not required at this point to make a final determination regarding the reasonableness of the Settlement, and no Class Member's or Shareholder's substantive rights will be prejudiced by preliminary approval.

For the reasons set forth herein, Lead Plaintiff and Lead Derivative Plaintiff and their respective counsel respectfully submit that the proposed Settlement is fair, reasonable and adequate and warrant the publication of notice and a final fairness hearing and should be preliminarily approved.

## II.  STATEMENT OF FACTS

### A.  The CAC and the Procedural History of This Action

The first case against Doral was filed on April 20, 2005.  Thereafter, numerous other suits were filed in this Court and in other federal courts.  By order of the Multi-District Litigation Panel, on October 31, 2005, the securities cases and derivative cases against Doral were transferred to this Court.

On February 6, 2006, the Court appointed West Virginia Investment Management Board to serve as Lead Plaintiff and approved its choice of Lerach Coughlin Stoia Geller Rudman & Robbins

LLP ("Lerach Coughlin") to serve as Lead Counsel. On June 22, 2006, the Lead Plaintiff filed the CAC.

On April 26, 2006, the Court appointed Rosenbaum Capital, LLC as Lead Derivative Plaintiff over the consolidated derivative actions and appointed the law firm of Federman & Sherwood to serve as Lead Derivative Counsel. By Order dated October 4, 2006, the Court subsequently consolidated Corwin v. Levis, et al., Case No. 06 Civ. 7711, with the consolidated derivative actions. The court reaffirmed the appointment of Federman & Sherwood to serve as Lead Derivative Counsel.

The CAC details a pervasive accounting fraud at Doral that centered on the Company's mischaracterization of transactions between itself and other banks. As detailed in the CAC, during the Class Period, Doral issued materially false and misleading financial statements that violated the federal securities laws and GAAP in order to overstate the Company's pre-tax income by more than $920.8 million and understate its debt by more than $3,3 billion. During the Class Period, Doral purportedly sold more than $4 billion of fixed rate non-conforming mortgages to First BanCorp and others. In connection with the "sales," Doral retained a portion of the interest to be paid on the mortgages – known as an interest-only strip ("IO Strips") – and booked a gain on the sale of the mortgages. Doral then valued its growing pool of IO Strips utilizing certain assumptions that it represented were "sound" and based on an "independent" analysis. As a result of these purported "sales," during the Class Period, Doral's reported income grew considerably and its pool of IO Strips rose as well. Contrary to Defendants' representations, however, Doral did not truly "sell" the mortgages but instead was simply borrowing money which was collateralized by the mortgages. Indeed, through side deals and oral agreements, Doral provided the "purchaser" with full recourse rights that were far beyond the scope of the limited recourse rights provided for in the written

contracts between the parties, thereby rendering the transactions as loans. Furthermore, the assumptions utilized by Doral to value its IO Strips were not "sound" or "independent" but rather were manufactured by Defendants to conceal losses in the Company's portfolio of IO Strips. Doral has now admitted that its reported financial results for the past five years were materially false and misleading when issued and has restated its financial statements for the five year period ended December 31, 2004.

On September 15, 2006, Defendants moved to dismiss the CAC and Lead Plaintiff opposed those motions on November 13, 2006. During this time, the parties determined to attempt to mediate a resolution of the claims against Doral and its former directors and officers. On September 25, 2005, Lead Derivative Plaintiff served a settlement demand on Defendants based, in part, on Doral's financial condition. Defendants responded to the Lead Derivative Plaintiff's demand and thereafter provided information both financial and structural to Lead Derivative Counsel.

### B. Settlement Negotiations

The parties mediated before the Honorable Daniel Weinstein (Ret.) of JAMS. The mediation took place over five months during which the parties had numerous face-to-face full day mediation sessions and numerous telephonic sessions with the mediator. The mediation enabled the parties to have a full and frank discussion about the strengths and weaknesses of Plaintiffs' claims and the ability of Doral to fund a settlement or pay a judgment.

During the mediation, Defendants provided Lead Plaintiff with detailed financial information about Doral and its present operating condition. Defendants also detailed the regulatory issues facing the Company and the restraints that were being placed on the Company by federal banking authorities. Importantly, Defendants repeatedly emphasized the financial pressure that was on the Company due to the $625 million bond payment due in July 2007. In response to Defendants' representations, Lead Plaintiff retained an expert on valuation and an expert on banking regulatory

matters. These experts provided Lead Plaintiff with an enhanced ability to analyze, understand and question the information that Defendants were providing concerning Doral.

As can be seen by the foregoing, the negotiations were hard fought and, at times, contentious and certainly were at arm's-length. Eventually, with the assistance of the mediator, the parties were able to reach an agreement on the Settlement that is presently before the Court.

### C. The Stipulation and Proposed Agreement of Settlement

The Proposed Partial Settlement consists of $129 million in cash plus corporate governance reforms. Of the $129 million, $34 million is to be paid from Doral's directors and officers liability insurance policies, $1 million is to be paid by the Individual Defendants and approximately $94 million is to be paid by Doral. As set forth in the Stipulation, the Proposed Partial Settlement is expressly conditioned on Doral successfully refinancing the $625 million bond payment due in July 2007.

In addition to the cash component, the Proposed Partial Settlement of the securities class action also provides for Doral to adopt certain corporate governance policies. Those provisions are set forth in detail in the Stipulation. These corporate governance enhancements were negotiated in conjunction with the derivative litigation and comprise the consideration for the Proposed Derivative Settlement.

### III. ARGUMENT

#### A. The Settlement Warrants Preliminary Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may be dismissed or compromised, notice must be given in the manner directed by the court, and judicial approval must be obtained. Fed. R. Civ. P. 23(e). At the final approval hearing, the Court will have before it extensive papers submitted in support of the Settlement and will be asked to make a final determination as to whether the Settlement is fair, reasonable and adequate under all of the

circumstances surrounding the litigation. Here, however, Lead Plaintiff and Lead Derivative Plaintiff request only that the Court grant preliminary approval in order to authorize notifying Class Members and Shareholders of the terms of the settlements, and of their opportunity to be heard regarding the settlements at the hearing where final approval of the settlements will be considered.

The test for granting preliminary approval is whether the proposed settlement is "'at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard.'" *NASDAQ*, 1997 U.S. Dist. LEXIS 20835, at *24 (quoting *In re Baldwin-United Corp.*, 105 F.R.D. 475, 482 (S.D.N.Y. 1984)). *See Manual for Complex Litigation* §21.632 (4th ed. 2004). Here the proposed settlement amount and corporate governance reform easily satisfies that standard.

The Settlement is an excellent result, and is well within the range of reasonableness. *See In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993) (approving settlement that was only 6% of the potential recovery). *See also Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP), 2004 U.S. Dist. LEXIS 8608, at *15 (S.D.N.Y. May 14, 2004) (citing *Grinnell*, 495 F.2d at 455). *Accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989), *aff'd sub nom. Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992). Accordingly, it is respectfully submitted that preliminary approval of the Settlement should be granted and notice to the Class Members and Shareholders permitted.

### B. The Proposed Form and Manner of Notice are Adequate

Federal Rule of Civil Procedure 23(e)(2) requires that class members receive notice of any proposed settlement before final approval by the court. *Manual for Complex Litigation*, *supra*, §21.633, at 321-22. Lead Plaintiff respectfully submits that the proposed notices, which are annexed

as Exhibits B and C to the Stipulation, previously filed with the Court, are adequate. If approved by the Court, the notice in the form of Exhibit B, along with the Proof of Claim in the form of Exhibit D, will be sent by first-class mail to each Class Member identified from Doral's transfer records as purchasers of the Company's publicly traded securities during the Class Period. In addition, summary notice in the form of Exhibit C will be published in *The Wall Street Journal* and a newspaper within Puerto Rico with a wide circulation within seven (7) business days of the mailing of the Notice.

As required by Federal Rule of Civil Procedure 23(c)(2), the notices will inform Class Members of the claims alleged in the actions, the terms of the proposed Settlement and their rights as Class Members to opt out or object to the Settlement, or otherwise object to the Plan of Allocation of settlement proceeds and/or the proposed attorneys' fees and expenses. *See Consol. Edison, Inc. v. Northeast Utils.*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) ("'Due process requires that the notice to class members "fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'"") (citations omitted). *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982).

Lastly, as part of the preliminary approval of the partial Settlement, Lead Plaintiff also respectfully requests the appointment of Gilardi & Co. LLC ("Gilardi") as Administrator. As Administrator, Gilardi will be responsible for, among other things, mailing the notice to the Class, publishing the Summary Notice, reviewing claims, compiling a distribution schedule, and filing tax returns. Gilardi has extensive experience in settlement administration and will adequately fulfill its duties in this case.

### C. Proposed Schedule

Lead Plaintiff proposes the following schedule:

| | |
|---|---|
| Notice mailed to Class Members ("Notice Date") | 14 days from preliminary approval |
| Summary Notice published | 7 days from Notice Date |
| Last day to request exclusion from or object to Settlement | 21 days prior to the Final Approval Hearing Date |
| Date by which to file papers in support of Settlement, Plan of Allocation and request for attorneys' fees and expenses | 7 calendar days prior to hearing |
| Final approval hearing | July 16, 2007, Approximately 70 days from Notice Date, at the Court's convenience |
| Last day for Class Members to file Proof of Claim forms | 90 days from Notice Date |

This schedule is similar to those used in numerous class action settlements and provides due process to Class Members with respect to their rights concerning the settlements.

### D. Settlement of the Shareholder Derivative Action is Favored

Rule 23.1 of the Federal Rules of Civil Procedure provides that a shareholder derivative action "shall not be dismissed or compromised without the approval of the court. . . ." In shareholder derivative actions, as in other representative actions, the court plays an important role as a protector of the absent shareholders' interest. *Accord Newman v. Stein*, 464 F.2d 689, 691-92 (2d Cir.), *cert. denied*, 409 U.S. 1039 (1972). Thus, the ultimate determination of whether a proposed settlement of a shareholder derivative action warrants approval resides in the District Court's discretion. *See, e.g., Maher v. Zapata Corp.*, 714 F.2d 436, 454 (5th Cir. 1983).

Public policy strongly favors the settlement of disputes, including, of course, shareholder derivative actions. The negotiated settlement of derivative litigation is generally favored. This is particularly true with respect to derivative litigation arising form allegations of complex securities fraud. *Maher*, 714 F.2d at 455. The *Maher* Court reasoned that "[s]ettlements of shareholder

derivative litigation actions are particularly favored because such litigation is notoriously difficult and unpredictable." *Id.* at 455, *quoting Schimmel v. Goldman*, 57 F.R.D. 481, 487 (S.D.N.Y. 1977).

Preliminary approval of a shareholder derivative settlement allows the settling parties to notify shareholders of the corporation and to proceed to final approval. *See Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970).

As one commentator has stated, "[t]he role of the court and the criteria to be considered in evaluating the adequacy and fairness of a derivative settlement are substantially the same as in a class action." Herbert Newberg and Alba Conte, Newberg on Class Actions (Third Ed.) §22.103, 22-410. Preliminary approval of a class action settlement is appropriate where the settlement agreement is the product of arm's length negotiations, is facially sufficient, and is within the "ballpark" of possible approval. *Manual for Complex Litigation*, Third §30.44 at 229. In passing on the propriety of a derivative settlement, the court must determine whether the proponents of the settlement have shown that it fairly and adequately serves the interests of the corporation on whose behalf the derivative action was instituted. *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992).

The Proposed Derivative Settlement provides significant therapeutic benefits to Doral, and its shareholders as set forth in the Stipulation of Settlement. Much research has confirmed that shareholders place a high value on honest and ethical corporate governance. Several academic investigations in 2003 found that companies with strong shareholder rights and good corporate governance procedures produced significantly higher annualized returns than those without adequate corporate governance procedures. Further, the results of the study entitled Firms' Corporate Governance and the Cost of Debt: An Analysis of U.S. Firms' GMI Rating, demonstrate that specific attributes of positive governance are associated with a company's credit ratings. This provides

additional substantial benefits to Doral and its shareholders. Thus, the Proposed Derivative Settlement is worthy of preliminary approval and settlements similar to the instant Settlement have been approved by courts as fair, reasonable and adequate. Lead Derivative counsel maintains that the Proposed Derivative Settlement represents the best possible resolution of this matter, and submits that the Proposed Derivative Settlement is fair, reasonable and adequate and should be approved by the Court. The consideration is that Doral will maintain new corporate governance initiatives which are significant considering all of the relevant factors in this lawsuit. Moreover, the Proposed Derivative Settlement serves the interests of Doral and its shareholders.

Courts have approved derivative settlements which provided only therapeutic, non-monetary benefits, even where the benefits have been deemed modest. *See e.g., Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993). Counsel for Defendants and Derivative Counsel have balanced and valued the Proposed Derivative Settlement against the risks of proceeding, and have determined that the terms of the Stipulation best serve the interests of their respective clients. The Court should give considerable weight in the views of counsel as to the merits of the Proposed Derivative Settlement. *Slomovics v. All For A Dollar, Inc.*, 906 F. Supp. 146, 150 (E.D.N.Y. 1995). Thus, the Proposed Derivative Settlement, which is a product of extensive arm's length negotiations is presumptively fair, adequate and reasonable and should be preliminarily approved.

## IV.    CONCLUSION

Lead Plaintiff and Lead Derivative Plaintiff respectfully request approval of the motion for an order preliminarily approving the Settlement, directing notice be sent to all Class Members and summary notice to be published, and setting a hearing date for final approval.

DATED:  May 2, 2007

Respectfully submitted,

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN (SR-7957)
ROBERT M. ROTHMAN (RR-6090)

*s/ Samuel H. Rudman*
SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
PATRICK J. COUGHLIN
ELLEN GUSIKOFF STEWART
655 W. Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

FEDERMAN & SHERWOOD
William Federman
Sara E. Collier
10205 N. Pennsylvania
Oklahoma City, OK  73120
Telephone:  405/235-1560
405/ 239-2112 (fax)

Lead Derivative Counsel

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2007, a copy of the foregoing Lead Plaintiff's and Lead Derivative Plaintiff's Memorandum of Law in Support of Motion for Preliminary Approval of Settlement was sent, via U.S. Mail, postage prepaid to the following parties on the attached service list.

                                                _____*s/ Samuel H. Rudman*_____
                                                        Samuel H. Rudman

Doral - Service List

Defense Counsel

Heidi L. Rodriguez-Benitez
Nestor Mendez-Gomez
Pietrantoni, Mendez & Alvarez
209 Munoz Avenue, Suite 1901
San Juan, PR 00918

Matthew David Slater
Cleary, Gottlieb, Steen and Hamilton LLP
2000 Pennsylvania Avenue, N.W.
Washington, DC 20006

Enrique Peral
Munoz Boneta Benitez Peral & Bruqueras
P.O. Box 191979
San Juan, PR 00919

Jeffrey Burton Sklaroff
Jesus E. Cuza
Greenberg Traurig, LLP
200 Park Avenue
New York, NY 10166

Kenneth Y. Turnbull
James Andrew Meyers
Orrick, Herrington & Sutcliffe, LLP
3050 K Street, N.W.
Washington, DC 20007

Jennifer L. Kroman
Cleary Gottlieb Steen & Hamilton, LLP
1 Liberty Plaza
New York, NY 10006

Barry Wayne Rashkover
Lynn Ann Dummett
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019

Kelly Marie Hnatt
Michael Richard Young
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019

Diana L. Weiss
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, NY 10103

Jonathan B. Gaskin
Orrick, Herrington & Sutcliffe, LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105

Modesto L. Rodriguez-Suarez
Marichal & Hernandez
33 Bolivia, Suite 301
San Juan, PR 00917