# EXHIBIT  1

1

```
 1                          PAGES 1 - 20

 2                  UNITED STATES DISTRICT COURT

 3                NORTHERN DISTRICT OF CALIFORNIA

 4           BEFORE THE HONORABLE CHARLES R. BREYER

 5 IN RE:  BROCADE COMMUNICATIONS      )
   SYSTEMS, INC. DERIVATIVE            )  NO. C 05-2233 CRB
 6 LITIGATION,                         )
   _____)  SAN FRANCISCO, CALIFORNIA
 7                                        FRIDAY, APRIL 27, 2007

 8

 9                   TRANSCRIPT OF PROCEEDINGS

10

11 APPEARANCES:

12
   FOR PLAINTIFFS        FEDERMAN & SHERWOOD
13 JHA AND PRATT         10205 N. PENNSYLVANIA
                         OKLAHOMA CITY, OKLAHOMA  73120
14                  BY:  WILLIAM B. FEDERMAN, ESQUIRE

15
                        MARY ALEXANDER & ASSOCIATES
16                      44 MONTGOMERY STREET, SUITE 1303
                        SAN FRANCISCO, CALIFORNIA  94104
17                  BY:  MARY E. ALEXANDER, ESQUIRE

18

19 FOR BROCADE AND       WILSON, SONSINI, GOODRICH & ROSATI
   MESSRS KLAYKO, NEIMAN, 650 PAGE MILL ROAD
20 DEMPSEY, PAISLEY,     PALO ALTO, CALIFORNIA  94304
   HOUSE, MOORE,    BY:  NINA F. LOCKER, ESQUIRE
21 KRAUSE, VASWANI,      STEVEN GUGGENHEIM, ESQUIRE
   WALKER
```

22

23 (FURTHER APPEARANCES ON FOLLOWING PAGE)

24
   REPORTED BY:     JOAN MARIE COLUMBINI, CSR 5435, RPR
25                  OFFICIAL COURT REPORTER, U.S. DISTRICT COURT

                                                                2

1 APPEARANCES (CONTINUED):

2 FOR KPMG               SIDLEY AUSTIN, LLP
                         555 CALIFORNIA STREET
3                        SAN FRANCISCO, CALIFORNIA  94104
                    BY:  GEOFFREY M. EZGAR, ESQUIRE
4


5
  FOR OBJECTOR CHEAN     JOHNSON BOTTINI, LLP
6 SHEE LIM AND STATE     655 WEST BROADWAY, SUITE 1400
  COURT DERIVATIVE       SAN DIEGO, CALIFORNIA  92101
7 PLAINTIFFS        BY:  FRANCIS A. BOTTINI, JR., ESQUIRE


8
                         ROBBINS, UMEDA & FINK, LLP
9                        610 WEST ASH STREET, SUITE 1800
                         SAN DIEGO, CALIFORNIA  92101
10                  BY:  MARC M. UMEDA, ESQUIRE


11

12 FOR OBJECTORS         NIX, PATTERSON & ROACH, LLP
   ARKANSAS AND PUERTO   205 LINDA DRIVE
13 RICO                  DAINGERFIELD, TEXAS  75638
                    BY:  BRADLEY E. BECKWORTH, ESQUIRE
14                       JEFFREY A. ANGELOVICH, ESQUIRE


15

16 FOR PUERTO RICO       SCHIFFRIN, BARROWAY, TOPAS & KESSLER
   GOVERNMENT EMPLOYEES  280 KING OF PRUSSIA ROAD
17 RETIREMENT SYSTEM     RADNOR, PENNSYLVANIA  19087
                    BY:  SEAN M. HANDLER, ESQUIRE
18

```
19
   FOR DEFENDANT REYES        SKADDEN, ARPS, SLATE, MEAGHER & FLOM
20                            525 UNIVERSITY AVENUE
                             PALO ALTO, CALIFORNIA  94301
21                    BY:  GARRET J. WALTZER, ESQUIRE

22

23 FOR DEFENDANT CANOVA     HELLER, EHRMAN, WHITE & MCAULIFFE, LLP
                            333 BUSH STREET
24                          SAN FRANCISCO, CALIFORNIA
                      BY:  MICHAEL E. LIFTIK, ESQUIRE
25
```

3

```
 1          PROCEEDINGS; FRIDAY, APRIL 27, 2007

 2

 3          THE CLERK:  CALLING CASE C 05-2233, IN RE: BROCADE

 4 COMMUNICATIONS SYSTEMS.

 5          APPEARANCES, COUNSEL.

 6          MS. LOCKER:  GOOD MORNING, YOUR HONOR.  NICKI LOCKER

 7 FROM WILSON, SONSINI ON BEHALF OF BROCADE, AS WELL AS MESSRS.

 8 KLAYKO, NEIMAN, DEMPSEY, PAISLEY, HOUSE, MOORE, KRAUSE, VASWANI

 9 AND WALKER.

10          MR. FEDERMAN:  GOOD MORNING, YOUR HONOR.  WILLIAM B.

11 FEDERMAN ON BEHALF OF THE PLAINTIFFS IN THE FEDERAL DERIVATIVE

12 CASE, ANJANI JHA, J-H-A, AND WILLIAM PRATT.

13          MR. EZGAR:  GOOD MORNING, YOUR HONOR.  GEOFFREY

14 EZGAR OF SIDLEY AUSTIN ON BEHALF OF KPMG.
```

15          MS. ALEXANDER:  GOOD MORNING, YOUR HONOR.  MARY

16 ALEXANDER ON BEHALF OF THE PLAINTIFFS JHA AND PRATT.

17          MR. BOTTINI:  GOOD MORNING, YOUR HONOR.  FRANK

18 BOTTINI WITH JOHNSON BOTTINI FOR OBJECTOR CHEAN SHEE LIM AND

19 THE STATE COURT DERIVATIVE PLAINTIFFS.

20          MR. UMEDA:  GOOD MORNING, YOUR HONOR.  MARK UMEDA

21 FOR STATE COURT PLAINTIFF AND OBJECTOR LIM AS WELL.

22          MR. LIFTIK:  GOOD MORNING, YOUR HONOR.  MICHAEL

23 LIFTIK AND ANDREA BROWN OF HELLER EHRMAN ON BEHALF OF DEFENDANT

24 ANTONIO CANOVA.

25          MR. GUGGENHEIM:  GOOD MORNING, YOUR HONOR.  STEVEN

4

1 GUGGENHEIM APPEARING WITH MS. LOCKER.

2          MR. BECKWORTH:  GOOD MORNING, YOUR HONOR.  BRAD

3 BECKWORTH OF NIX, PATTERSON & ROACH ON BEHALF OF ARKANSAS AND

4 PUERTO RICO, THE OBJECTORS TO THE SETTLEMENT.

5          MR. HANDLER:  GOOD MORNING, YOUR HONOR.  SEAN

6 HANDLER ON BEHALF OF THE INSTITUTIONAL OBJECTORS.

7          MR. ANGELOVICH:  YOUR HONOR, JEFF ANGELOVICH WITH

8 THE NIX LAW FIRM ON BEHALF OF ARKANSAS AND PUERTO RICO, THE

9 OBJECTORS.

10          MR. WALTZER:  GARRETT WALTZER WITH THE SKADDEN ARPS

11 FIRM FOR GREG REYES.

12            THE COURT:  WELL, THIS IS THE TIME FOR THE HEARING

13 ON THE APPROVAL OF THE SETTLEMENT.  AND THE COURT, OF COURSE,

14 RECEIVED OBJECTIONS, ONE OF WHICH HIGHLIGHTED THE ISSUE AS TO

15 WHETHER OR NOT THIS COURT EVEN HAS JURISDICTION OVER THE

16 PROCEEDINGS IN LIGHT OF THE FACT THAT KPMG WOULD APPARENTLY

17 DESTROY DIVERSITY JURISDICTION, AS I UNDERSTAND KPMG'S POSITION

18 TO BE, WHICH SEEMS RIGHT TO ME, LOOKING AT THE PAPERS.

19            IS THERE SOMEBODY WHO WANTS TO SAY THAT KPMG BEING A

20 PARTY IN THE ACTION WOULD NOT DESTROY DIVERSITY JURISDICTION?

21 I'LL HEAR THAT ARGUMENT.

22            MR. FEDERMAN:  YOUR HONOR, KPMG IS NOT GOING TO BE

23 INCLUDED IN ANY AMENDED COMPLAINT.

24            THE COURT:  THEY ARE A PARTY.  ARE THEY A PARTY IN

25 THE ACTION?

                                                          5


1            MR. FEDERMAN:  THEY'VE NEVER FILED AN ANSWER TO ANY

2 PLEADING IN THIS CASE.

3            THE COURT:  WERE THEY SUED?

4            MR. FEDERMAN:  THEY WERE NAMED, YOUR HONOR, AND THEY

5 WILL BE DISMISSED.

6            THE COURT:  THEY WILL BE DISMISSED?  YOU ARE

7 DISMISSING?

8          MR. FEDERMAN:  YES, WE WERE DISMISSING.

9          THE COURT:  KPMG IS HEREBY --

10         MR. FEDERMAN:  HEREBY DISMISSED.

11         THE COURT:  -- HEREBY DISMISSED; IS THAT CORRECT?

12         MR. FEDERMAN:  YES, WITHOUT PREJUDICE, YOUR HONOR.

13         THE COURT:  WITH THAT, GOODBYE KPMG.  NOW I HAVE

14 JURISDICTION.

15         OKAY.  WHO IS KPMG'S COUNSEL?

16         MR. EZGAR:  I AM, YOUR HONOR.

17         THE COURT:  TELL YOUR CLIENT WHAT A FABULOUS JOB YOU

18 DID.

19         MR. EZGAR:  THANK YOU.  I WILL.

20         THE COURT:  ALL RIGHT.  NOW WE GET TO THE

21 SETTLEMENT.

22         IN MY EXPERIENCE ON THE BENCH, I HAVE NEVER SEEN

23 ANYTHING QUITE LIKE THIS.  THE VARIOUS PARTIES -- WE'LL LEAVE

24 OUT THE DEFENDANTS FOR THE MOMENT -- HAVE FILED ALL SORTS OF

25 OBJECTIONS, SOME OF WHICH ARE QUITE TROUBLING.

                                          6


1          THE STATE COURT PLAINTIFFS TAKE THE POSITION THAT

2 THE SETTLEMENT IS ILLUSORY, THAT THE RELIEF THAT'S GRANTED

3 HARDLY MERITS ANY CONSIDERATION, THAT THE ONLY THING THAT CAME

4 OUT OF THE SETTLEMENT, ESSENTIALLY, WAS $525,000 OF ATTORNEYS'

5 FEES THAT THE SO-CALLED REFORMS OF CORPORATE GOVERNANCE ARE --

6 SOME OF WHICH, BY THE WAY, ARE REQUIRED BY SARBANES-OXLEY, ALL

7 OF WHICH, BY THE WAY, CAN BE TERMINATED BY THE BOARD OF

8 DIRECTORS DECIDING THAT IT'S IN THE INTERESTS OF THE

9 CORPORATION AND THE SHAREHOLDERS.  THE REFORMS CAN BE DONE AWAY

10 WITH.

11         THEREFORE, THEY SAY, WHAT WAS GAINED BY THIS?  SOME

12 SO-CALLED CORPORATE GOVERNANCE REFORMS THAT COULD BE ELIMINATED

13 BY BOARD OF DIRECTORS IF THEY THINK THAT IT'S IN THE INTEREST

14 OF THE CORPORATION TO GET RID OF THEM?  THAT'S NOTHING.  THAT'S

15 TOTALLY ILLUSORY.  AND, OF COURSE, THEY ARE RIGHT.

16         IT'S NOTHING.  TO SAY THAT I'M GOING TO INSTITUTE

17 SOME CORPORATE MEASURES AND HOW VALUABLE THEY ARE, AND TURN

18 AROUND IN THE NEXT MOMENT AND SAY, WELL, BY THE WAY, IF THE

19 CORPORATION WANTS TO GET RID OF THEM, THEY CAN, ASSUMING THEY

20 GO THROUGH THE PROCESS AND ASSUMING THE CORPORATION BELIEVES IN

21 THEIR FIDUCIARY DUTY IN EXERCISE OF THE BUSINESS JUDGMENT RULE,

22 THIS IS IN THE BEST INTERESTS OF THE CORPORATION, THEY GO, ALL

23 THESE CORPORATE GOVERNANCE RESTRICTIONS GO.

24         SO THE PLAINTIFFS IN THE STATE COURT ACTION SAY,

25 THIS IS A SHAM, THIS IS A FRAUD, THIS IS TOTALLY ILLUSORY FROM

                                                    7

1 A SETTLEMENT POINT OF VIEW.  THEY SAY, FURTHERMORE, BY THE WAY,

2 WE DON'T EVEN THINK THAT THESE LAWYERS WHO, BY THE WAY, ARE

3 GOING TO GET 525,000 ARE REALLY PROVIDING VIGOROUS AND ADEQUATE

4 REPRESENTATION, AND WE HAVE SOME SERIOUS QUESTIONS AS TO THE

5 FUTILITY OF THE DEMAND; THAT IS, WE BELIEVE, AS I UNDERSTAND

6 THE STATE COURT OBJECTORS TO BE SAYING, WE BELIEVE THAT, BASED

7 ON THE EVIDENCE AS IT IS EVOLVING, WE WILL BE ABLE TO SHOW THAT

8 A DEMAND ON THE BOARD OF DIRECTORS WOULD BE FUTILE AND THAT,

9 THEREFORE, WE WOULD BE ABLE TO GO AHEAD IN THE FIRST STATE

10 COURT PROCEEDINGS, THAT'S WHAT I UNDERSTAND THE PLAINTIFFS'

11 CASE TO BE.

12        JUDGE KOMAR, A VERY FINE JUDGE IN THE STATE COURT

13 SYSTEM, INITIALLY STAYED THE PROCEEDINGS AWAITING A

14 DETERMINATION OF THIS COURT, AND THEN UPON LEARNING THAT A

15 SETTLEMENT OF THIS MATTER WAS BEING PROPOSED, AS I UNDERSTAND,

16 LIFTED THE STAY AND ALLOWED THE STATE COURT PLAINTIFFS TO

17 PROCEED WITH THEIR ARGUMENTS IN DEVELOPING THE EVIDENCE AS TO

18 WHETHER OR NOT A DEMAND WOULD BE FUTILE.  THAT'S ONE SET OF

19 OBJECTORS.

20        THEN COME -- AND THIS WAS A GREAT -- THIS I'VE NEVER

21 SEEN BEFORE.  THE PLAINTIFFS IN THIS CASE WHO ENTERED INTO A

22 SETTLEMENT AGREEMENT TAKE THE POSITION THAT I SHOULDN'T APPROVE

23 THE SETTLEMENT AGREEMENT TODAY.  THEY SAY, WELL, WE'RE STILL

24 WITH IT IN PRINCIPLE -- BY THE WAY, WHATEVER THAT MEANS; I HAVE

25 NO IDEA WHAT THAT MEANS -- BUT WE REALLY DON'T WANT YOU TO

                                                    8

 1 APPROVE IT TODAY.  WE WOULD LIKE TO SORT OF TAKE A WAIT-AND-SEE

 2 APPROACH, WHICH IS INTERESTING IN LIGHT OF MY RUDIMENTARY

 3 UNDERSTANDING OF CONTRACT LAW AS TO WHEN YOU ENTER INTO A

 4 SETTLEMENT AGREEMENT WHETHER YOU HAVE A RESPONSIBILITY TO USE

 5 ALL EFFORTS TO PROMOTE THE SETTLEMENT AS A MATTER OF CONTRACT

 6 LAW.

 7          PUTTING THAT ASIDE, THE PLAINTIFFS REALLY BOIL DOWN

 8 TO -- THEIR ARGUMENT BOILS DOWN TO, YOU KNOW, WE ARE SORT OF

 9 LEARNING THINGS ABOUT THIS CASE AS IT GOES ON IN ITS OTHER

10 CONFIGURATIONS, THE CRIMINAL CASE, THE SEC CASE, AND WE

11 REALLY -- WE'D LIKE TO FIND OUT WHAT THIS CASE IS REALLY ABOUT:

12          WHO DID WHAT TO WHOM?  WHO DID WHAT WHEN?  WHO

13 APPROVED THIS?  WHO DIDN'T APPROVE THAT?  WHAT ADVICE WAS

14 GIVEN?  WHAT ADVICE WASN'T GIVEN?  WE WOULD LIKE TO FIND OUT

15 MORE OF THIS OF OUR OWN CASE BEFORE WE AGREE TO SETTLE IT, AND

16 THEN THEY'VE -- BUT, OF COURSE, WE'VE ALREADY AGREED TO SETTLE

17 IT WITHOUT KNOWING THESE THINGS ABOUT THE CASE, BUT WE DID SO

18 IN FAIRNESS TO THE PLAINTIFFS; WE DID SO BECAUSE WE THOUGHT WE

19 MIGHT NOT BE ABLE TO GET OVER THE BARRIER OF THE DEMAND AND

20 THAT'S THEIR POSITION.

21          NOW I THINK THEY'RE SAYING, WE ARE NOT SO SURE WE

22 CAN'T GET OVER THAT BARRIER.

23          BY THE WAY, WHAT I SAID THE LAST TIME, AT LEAST WHAT

24 I THINK I SAID THE LAST TIME, WAS NOT THAT THE DEFENDANTS HAVE

25 ESTABLISHED THAT THE BOARD OF DIRECTORS IS INDEPENDENT AND,

                                                        9

1 THEREFORE, THE DEMAND WOULD NOT BE FUTILE.  I SAID THE

2 PLAINTIFFS HAVEN'T MADE A SHOWING THAT THE BOARD OF

3 DIRECTORS -- THAT A DEMAND WOULD BE FUTILE.  AND I ALLOWED THEM

4 THE OPPORTUNITY OF MAKING A MORE PERSUASIVE SHOWING IN THEIR

5 CLAIM THAT THE DEMAND WAS FUTILE, BUT WHAT THEY DID INSTEAD WAS

6 COME BACK WITH A SETTLEMENT.

7          NOW, THEY ARE ENTITLED TO DO THAT, BUT I WOULDN'T

8 READ TOO MUCH INTO MY DECISION AS TO WHAT I ACTUALLY SAID

9 BECAUSE I MADE NO FINDING, AT LEAST IF I HAVE, YOU CAN POINT IT

10 OUT TO ME.  I DON'T THINK I'VE MADE A FINDING THAT THIS BOARD

11 OF DIRECTORS IS ABSOLUTELY INDEPENDENT AND CAN MAKE THIS

12 DECISION ON THE DEMAND, AND, THEREFORE, I WOULD HAVE TO TAKE A

13 LOOK AT IT FROM THE BUSINESS JUDGMENT RULE AND MAKE A

14 DETERMINATION AS TO WHETHER OR NOT IT MET THE TEST.

15          SO WHAT THE PLAINTIFFS ARE SAYING, WHAT IT ALL BOILS

16 DOWN TO IS THEY WANT TO WAIT AND SEE.  THEY ARE NOT IN FAVOR OF

17 THE SETTLEMENT TODAY.

18        THEN YOU GET TO THE INSTITUTIONAL OBJECTORS.  I'M

19 SORRY.  IT'S PUERTO RICAN PENSION FUND?  WHO ARE THEY?  IT'S

20 CALLED PRGERS, PUERTO RICAN --

21        MR. HANDLER:  PUERTO RICAN GOVERNMENT EMPLOYEES

22 RETIREMENT SYSTEM, YOUR HONOR.

23        THE COURT:  AND APERS, WHICH IS --

24        MR. HANDLER:  ARKANSAS GOVERNMENT EMPLOYEES

25 RETIREMENT SYSTEM.

                                        10


1        THE COURT:  AND THEY SAY, JUDGE, YOU DON'T HAVE TO

2 WAIT, THROW IT OUT TODAY, THIS IS A RIDICULOUS SETTLEMENT, FOR

3 ALL THE REASONS, INCLUDING THAT THE PLAINTIFFS DON'T EVEN WANT

4 IT TODAY.  THEN THEY SAY, AND WE DON'T LIKE THE PLAINTIFFS'

5 IDEA OF SIMPLY WAITING ON A WAIT-AND-SEE BASIS BECAUSE WE'RE

6 CONCERNED THAT IF -- OVER THE PASSAGE OF TIME, THAT WE WON'T BE

7 ABLE TO RENEW OBJECTIONS AND SO FORTH, WHICH, BY THE WAY, I

8 THINK I CAN TAKE CARE OF IN AN ORDER.

9        I THINK I COULD TAKE THE INSTITUTIONAL SHAREHOLDERS,

10 IF I POSTPONE THIS, AND LEAVE THEM IN THE SAME POSITION TO MAKE

11 ALL THE ARGUMENTS, THE OBJECTIONS THAT THEY WANT TO MAKE, EVEN

12 IN LIGHT OF NEW EVIDENCE THAT AS IT'S ADDUCED AT A LATER DATE.

13 SO I THINK I TAKE CARE OF THAT PROBLEM.

14          BUT THEN THEY RAISE ANOTHER POINT, WHICH I THINK IS

15 A VERY SERIOUS POINT, WHICH IS HOW DO WILSON, SONSINI, GOODRICH

16 & ROSATI BE COUNSEL IN THIS CASE, WHICH IS FRAUD WITH ALL KINDS

17 OF POTENTIAL CONFLICTS OF INTEREST OR EVEN ACTUAL CONFLICTS OF

18 INTEREST, TO WHICH WILSON, SONSINI, GOODRICH & ROSATI TELL US,

19 WELL, WE'RE NOT REALLY ACCUSED OF DOING ANYTHING WRONG, AND

20 THAT MAY BE CORRECT.  BUT THE ISSUE ISN'T WHETHER YOU ARE

21 ACCUSED OF ANYTHING -- OF ANY WRONGDOING.  THE ISSUE IS WHETHER

22 OR NOT THERE IS SOME POTENTIAL LIABILITY FOR ANY OF THE ADVICE

23 OR ACTIVITIES THAT OCCURRED WITH RESPECT TO THIS BACKDATING

24 WHICH WOULD LEAD TO LIABILITY OF EITHER THE FIRM OR A PARTNER

25 OF THE FIRM.

                                                        11

1          I DIDN'T NOTICE OR MAYBE I DIDN'T HEAR COUNSEL WHEN

2 YOU IDENTIFIED WHO YOU REPRESENTED, WHETHER YOU ARE HERE ON

3 BEHALF OF MR. SONSINI, BUT AS WE KNOW, MR. SONSINI, AS I'VE

4 LEARNED IN CONNECTION IN THE CRIMINAL CASE, PLAYS A ROLE IN

5 CONNECTION WITH THESE MATTERS.

6          BY PLAYING A ROLE -- BY THE WAY, I'M NOT SUGGESTING

7 THAT HE IS PLAYING A ROLE THAT WAS IMPROPER, BUT HE IS -- IT

8 HAS BEEN REPRESENTED THAT HE HAS GIVEN ADVICE IN CONNECTION

9 WITH THIS MATTER.  ARE YOU REPRESENTING MR. SONSINI?

10        MS. LOCKER:  MR. SONSINI IS NOT NAMED IN THIS

11 DERIVATIVE ACTION.  SO, NO, I DO NOT REPRESENT MR. SONSINI IN

12 THIS DERIVATIVE ACTION.

13        THE COURT:  I THOUGHT THE RELEASE -- MS. LOCKER, NOT

14 SO FAST.  I THOUGHT THE RELEASE RELEASED MR. SONSINI.  AM I

15 WRONG?

16        MS. LOCKER:  YOU ARE CORRECT.  THE RELEASE RELEASES

17 NOT ONLY THE NAMED DEFENDANTS IN THIS ACTION, BUT THE NAMED

18 DEFENDANTS IN THE STATE DERIVATIVE ACTION WHERE I DO REPRESENT

19 MR. SONSINI.

20        THE COURT:  BUT YOU HAVE NEGOTIATED A RELEASE FOR

21 MR. SONSINI IN THIS ACTION.

22        MS. LOCKER:  CORRECT.

23        THE COURT:  WELL, THEN I DON'T UNDERSTAND.  IS THERE

24 SOME NICE LINE BETWEEN HE'S NOT NAMED AS A DEFENDANT, BUT,

25 AFTER ALL, I GOT HIM A RELEASE?

                                        12


1        MS. LOCKER:  I'M SORRY.  YOUR HONOR, I THOUGHT YOU

2 ASKED ME WHO I MADE MY APPEARANCE FOR THIS MORNING IN THIS

3 ACTION.  I DIDN'T MAKE AN APPEARANCE HERE ON BEHALF OF

4 MR. SONSINI.

5        THE COURT:  I APPRECIATE THAT WAS THE QUESTION.  YOU

6 ARE RIGHT; THAT WAS THE QUESTION.  BUT, YOU SEE, THAT DOESN'T

7 ANSWER THE OTHER QUESTION, WHICH IS:  IF THERE ARE POTENTIAL

8 CONFLICTS OF INTEREST, HOW CAN WILSON BE COUNSEL IN THIS CASE?

9          MS. LOCKER:  YOUR HONOR, MAY I ADDRESS THAT?

10          THE COURT:  SURE.

11          MS. LOCKER:  SURE.  LET ME COMMENT FIRST ON THE CASE

12 LAW REGARDING DUAL REPRESENTATION OF A CORPORATION AND THE

13 DIRECTORS.

14          THE ONLY WAY TO RECONCILE THE CASES CITED BY BROCADE

15 AND THE CASES CITED BY APERS IS -- BECAUSE SOME OF THEM SAY

16 DUAL REPRESENTATION IS OKAY AND SOME OF THEM SAY DUAL

17 REPRESENTATION IS NOT OKAY, IS THAT IT'S A FACTS AND

18 CIRCUMSTANCES TEST.  AND THERE SEEM TO BE TWO KEY FACTS.

19          ONE IS WHAT'S THE STATE OF AFFAIRS WITH RESPECT TO

20 THE ISSUE OF THE BOARD'S AUTHORITY TO ACT ON BEHALF OF THE

21 CORPORATION, AND THE SECOND FACT AND CIRCUMSTANCE IS, WHAT'S

22 THE NATURE OF THE CLAIM; IS IT BREACH OF FIDUCIARY DUTY CLAIM,

23 OR IS IT FRAUD OR SELF-DEALING CLAIM?

24          WITH RESPECT TO THE FIRST ISSUE, THE BOARD'S

25 AUTHORITY TO ACT HERE, I THINK ORACLE WHICH IS THE CASE THAT

                                              13

1 APERS RELIES ON PRINCIPALLY IS QUITE INSTRUCTIVE.  IN THAT

2 CASE, THE DEFENDANTS ANSWERED THE COMPLAINT CONCEDING THAT THE

3 BOARD HAD NO AUTHORITY, AT LEAST AT THAT TIME, TO ACT WITH

4 RESPECT TO THE DERIVATIVE CLAIMS OR THE CLAIMS AGAINST THE

5 DIRECTORS IN THAT LAWSUIT.

6          THE BOARD HAD NOT MADE THE ARGUMENT THAT THE

7 PLAINTIFFS HAD NOT SUFFICIENTLY PLED THAT THEY WERE INTERESTED

8 OR LACKED INDEPENDENCE, AND, THEREFORE, THAT THEY STILL HAD THE

9 AUTHORITY.

10          HERE, ALTHOUGH THE COURT IS CORRECT THAT IT MADE NO

11 RULING, AFFIRMATIVE RULING, WITH RESPECT TO DISINTERESTEDNESS

12 AND INDEPENDENCE, THE PLAINTIFFS DID CHALLENGE THE BOARD'S

13 INDEPENDENCE AND DISINTERESTEDNESS AND LOST, AND THE STATE OF

14 AFFAIRS WAS THAT THIS BOARD HAD THE AUTHORITY TO MAKE DECISIONS

15 WITH RESPECT TO WHAT TO DO WITH THE DERIVATIVE CLAIMS AT ISSUE,

16 THE CLAIMS AGAINST OFFICERS, DIRECTORS, FORMER OFFICERS AND

17 DIRECTORS.  AND INHERENT IN THAT DECISION, INHERENT IN THAT

18 DECISION IS THE RIGHT TO MAKE THE DECISION ABOUT WHOSE

19 INTERESTS ARE ADVERSE AND WHOSE INTERESTS ARE IN CONFLICT WITH

20 THE CORPORATION, AND THAT BOARD -- THE BOARD MADE THAT DECISION

21 WHEN IT ENTERED INTO THE SETTLEMENT.

22          WITH RESPECT TO THE SECOND ISSUE, THE NATURE OF THE

23 CLAIMS, ARE THE CLAIMS -- HOW SERIOUS THEY ARE.  WHEN YOU LOOK

24 AT THE ABA, THE RULES OF PROFESSIONAL RESPONSIBILITY, IT SAYS

25 DUAL REPRESENTATION IS FINE UNLESS THERE'S SERIOUS ALLEGATIONS

14

1 OF WRONGDOING.

2          YOU LOOK AT THE CASES CITED BY APERS, THEY MAKE A

3 DISTINCTION BETWEEN CLAIMS FOR BREACH OF FIDUCIARY DUTY OF CARE

4 VERSUS SELF DEALING AND FRAUD.  AND THE ONLY ONE SAYING THERE'S

5 A CLAIM AGAINST MR. SONSINI IS APERS.  AND WHEN YOU LOOK AT THE

6 FACTORS THAT THEY SET FORTH THAT GIVE RISE TO THE SO-CALLED

7 VIABLE CLAIM AGAINST MR. SONSINI --

8          THE COURT:  WHAT ABOUT THE EVIDENCE -- THE

9 ALLEGATIONS THAT MR. SONSINI ADVISED MR. REYES HOW HE COULD SET

10 UP THIS COMPENSATION SCHEME, WHAT ABOUT THAT?

11          MS. LOCKER:  I'M SORRY.  THERE'S NOT A SINGLE

12 ALLEGATION ANYWHERE, YOUR HONOR, THAT MR. SONSINI ADVISED --

13 LET ME FINISH, PLEASE -- MR. REYES TO SET UP A COMPENSATION

14 SCHEME --

15          THE COURT:  WHATEVER IT'S CALLED.

16          MS. LOCKER:  NO, BUT IT'S IMPORTANT TO BE PRECISE.

17          THE COURT:  I'M NOT TRYING TO BE VAGUE OR I'M NOT

18 TRYING TO BE PARTICULARLY PRECISE.  AND, OBVIOUSLY, ANY

19 ALLEGATION WOULD HAVE -- NEEDS TO BE PRECISE.

20          BUT I'M SAYING THAT THERE IS EVIDENCE OUT THERE THAT

21 MR. SONSINI WAS INVOLVED IN THE MECHANISM IN SOME MANNER BY

22 WHICH ONE OF THE OFFICERS UTILIZED IN THE GRANTING OF

23 BACKDATING -- BACKDATED OPTIONS.

24           I DON'T KNOW WHAT THE MECHANISM WAS.  I DON'T KNOW

25 WHAT THE LEGALITY OF THE OPERATION WAS.  I DON'T EVEN KNOW

                                                15

1 WHETHER OR NOT IT WAS MATERIAL.  BUT I'M SAYING THAT THERE IS

2 CERTAINLY EVIDENCE OUT THERE THAT HE WAS INVOLVED IN SOME

3 MANNER.

4           YOU SAY, WELL, YOU HAVE TO BE VERY PRECISE.  I

5 APPRECIATE THAT.  BUT USUALLY WHEN THERE'S SOME ALLEGATION OF

6 THIS TYPE, LAW FIRMS STEP ASIDE AND ALLOW ANOTHER LAW FIRM TO

7 COME IN AND DO THE REPRESENTATION, AND THIS IS WHAT THE

8 OBJECTORS ARE SAYING.  THEY'RE SAYING THAT, AFTER ALL, IF

9 MR. SONSINI IS RELEASED, DOESN'T THAT AFFECT WILSON, SONSINI,

10 GOODRICH & ROSATI, DOESN'T IT HAVE SOME IMPACT; HE'S A PARTNER

11 IN THAT LAW FIRM.

12           MS. LOCKER:  AND THE ANSWER IS, TO YOUR LAST

13 QUESTION, YES, YOUR HONOR.  BUT THE ANSWER TO YOUR OTHER

14 QUESTION EARLIER, WHICH IS YOU DO KNOW, YOU DO KNOW THE NATURE

15 OF THE ALLEGATIONS, SO LET'S BE A BIT MORE PRECISE.

16           WHAT APERS ALLEGES IS THAT MR. SONSINI RECOMMENDED

17 SETTING UP THE COMMITTEE OF ONE.  THAT'S THE SUM AND SUBSTANCE

18 OF THE ALLEGATIONS.

19          JUST SEVERAL MONTHS AGO, APERS COUNSEL STOOD BEFORE

20 THIS COURT AND SAID THERE WAS NOTHING WRONG WITH A COMMITTEE OF

21 ONE, CONCEDED IT'S PERFECTLY LEGITIMATE UNDER DELAWARE LAW.

22 AND THE COURT HAS -- ALTHOUGH I DON'T BELIEVE THAT THE COURT

23 HAS SEEN IT YET BECAUSE IT'S IN THE PAPERS -- HAS THE EVIDENCE

24 BEFORE IT TO SAY THAT IS A COMMON PRACTICE, IT WAS COMMON THEN,

25 IT WAS COMMON NOW IN THE MOST RECENT STUDY, IT'S STILL 21

                                                    16

1 PERCENT OF CORPORATIONS WITH A COMMITTEE OF ONE, AGAIN

2 PERMISSIBLE UNDER DELAWARE LAW.

3          SO THE QUESTION IS -- AND I UNDERSTAND THE COURT'S

4 CONCERN, BUT THIS IS A LITTLE DIFFERENT THAN SIMPLY ALLEGING A

5 CLAIM AGAINST ALL DIRECTORS, THROWING SOMETHING OUT THERE AND

6 SIMPLY, THEREFORE, SAYING THEY ARE, THEREFORE, DISABLED AND

7 CONFLICTED FROM MAKING A DECISION ON BEHALF OF THE CORPORATION.

8          THE COURT:  BUT THE DECISION THAT WAS MADE WAS TO

9 RETAIN WILSON, SONSINI, GOODRICH & ROSATI.  THAT'S THE THING

10 THAT THEY'RE TALKING ABOUT HERE.  THAT'S THE THING THAT I CAN'T

11 GET OVER.  IT'S HIRING YOU, NOT THAT YOU'RE NOT A TERRIFIC

12 LAWYER AND THAT YOUR FIRM CAN'T RENDER LEGAL ADVICE.  THE POINT

13 IS IN THIS CASE IN WHICH THESE TYPES OF ALLEGATIONS ARE MADE

14 IN -- WHICH ARE UNTESTED, PERHAPS UNSUBSTANTIATED, IS IT

15 APPROPRIATE FOR YOU THEN AS THE LAW FIRM TO NEGOTIATE THE

16 SETTLEMENT?

17        THEY SAY THERE'S SOME SERIOUS QUESTIONS HERE, AND I

18 SAY IT APPEARS TO ME THERE ARE SOME SERIOUS QUESTIONS HERE. I

19 WON'T RULE ON IT. I DON'T HAVE IT BEFORE ME, BUT I THINK YOU

20 OUGHT TO THINK ABOUT IT. YOU OUGHT TO REALLY BE CONCERNED

21 WHETHER OR NOT YOU WANT TO CONTINUE WITH THE REPRESENTATION.

22 THAT'S -- AND I WOULD SAY THAT MAYBE IT'S VERY PATERNALISTIC OF

23 ME, BUT WHY WOULD YOU -- I'M TRYING TO FIGURE OUT, WHY WOULD

24 YOU WANT TO CONTINUE REPRESENTATION WHEN THESE TYPES OF ISSUES

25 ARE RAISED?

                                                17

1        I WAS A LAWYER LONG ENOUGH TO KNOW THAT ALLEGATIONS

2 CAN BE MADE WITHOUT FOUNDATION, WITHOUT SUBSTANCE AND WITHOUT

3 MERIT. BUT WHEN THOSE ALLEGATIONS ARE MADE AND AT LEAST SOME

4 OF THE FACTS SUPPORT THE FRAMEWORK OF THE ALLEGATIONS, I'VE

5 STEPPED ASIDE. I'VE STEPPED ASIDE AND LET SOME OTHER LAW FIRM

6 HANDLE IT. THERE ARE NO SHORTAGE OF LAW FIRMS IN THIS CASE.

7        MS. LOCKER: THEY WERE ALL TAKEN UP ALREADY, YOUR

8 HONOR.

9        THE COURT: YOU MIGHT HAVE TO GO OUTSIDE.

10        REALLY, I DO WANT -- I DO NOT WANT TO SUGGEST THAT I

11 THINK THAT YOUR LAW FIRM OR YOU ENGAGED IN ANY INAPPROPRIATE

12 CONDUCT.  THAT'S NOT BEFORE ME, AND I'M MAKING NO FINDING WITH

13 RESPECT TO IT.

14          I'M JUST SUGGESTING IN THIS CASE THAT HAS ACHIEVED A

15 CERTAIN HIGH PROFILE IN WHICH -- I'M CERTAINLY NOT GOING TO

16 APPROVE THE SETTLEMENT.

17          THERE'S NO WAY I'D APPROVE THIS SETTLEMENT TODAY.

18 ONE OF THE PARTIES WHO SETTLED DOESN'T WANT ME TO APPROVE IT.

19 AND I THINK IN FAIRNESS, WHAT I WOULD DO IS SIMPLY EXTEND THE

20 TIME TO CONSIDER WHETHER, WHEN OTHER EVIDENCE COMES UP, WHAT

21 THE PARTIES WANT TO DO IN THIS MATTER.

22          BUT I DO WANT YOU TO THINK ABOUT THAT SINCE IT HAS

23 BEEN RAISED BY THE OBJECTOR, AND I WANT YOU TO GIVE SOME

24 THOUGHT TO WHETHER, IN LIGHT OF THE ISSUES THAT ARE OUT THERE,

25 IT'S APPROPRIATE.  THAT'S ALL.

                                              18


1          MS. LOCKER:  THE ONLY REQUEST WE'D MAKE, YOUR HONOR,

2 WITH RESPECT TO THE PLAINTIFFS' REQUEST FOR POSTPONEMENT IS, IN

3 LATE 2006 BROCADE'S BOARD ESTABLISHED A SUBCOMMITTEE OF THREE

4 OUTSIDE DIRECTORS, ALL OF WHOM JOINED THE BOARD SUBSEQUENT TO

5 THE SPRING OF '05, WHICH IS AFTER THE INTERNAL INVESTIGATION

6 DISCLOSURES WERE MADE, WITH INDEPENDENT ADVISERS, BY THE WAY.

7 THEY HAVE MET AND DISCUSSED PLAINTIFFS' REQUEST FOR WHAT SEEMS

8 TO BE AN INDEFINITE POSTPONEMENT.  THEY WOULD LIKE THE

9  OPPORTUNITY TO BRING THEIR RECOMMENDATION OF HOW TO RESPOND TO

10 PLAINTIFFS' REQUEST TO THE FULL BOARD.

11          SO WITH THE COURT'S PERMISSION WE WOULD LIKE TO --

12 BROCADE WOULD LIKE AN OPPORTUNITY AFTER MAY 14TH, IF THAT'S

13 OKAY, THE WEEK OF MAY 14TH, TO MAKE A SUBMISSION IN RESPONSE TO

14 PLAINTIFFS' REQUEST.

15          THE COURT:  SURE.  THAT'S FINE.  THAT'S FINE.

16          LET ME TELL YOU WHAT MY EXPECTATION WOULD BE SO YOU

17 CAN HAVE THEM CONSIDER THIS.

18          WHAT I WOULD DO IS POSTPONE ANY RULING ON THE

19 SETTLEMENT, SET IT FOR A STATUS CONFERENCE -- AS YOU KNOW, ON

20 JUNE 11TH, THE TRIAL COMMENCES AGAINST MR. REYES, AND IT WILL

21 GO FORWARD ON JUNE 11TH.  I WOULD ANTICIPATE THAT THAT CASE

22 WILL BE CONCLUDED SOMETIME -- WHO KNOWS -- IN LATE JULY, EARLY

23 AUGUST.  SO I WAS GOING TO POSTPONE THIS MATTER FOR STATUS OR

24 FURTHER HEARING IN AUGUST.  THAT WILL BE THE INTENTION.

25          THAT ALLOWS THE PARTIES, THE STATE COURT PLAINTIFFS,

                                              19


1 TO DO WHATEVER THEY WANT TO DO.  IT ALLOWS -- I WOULD ALLOW THE

2 CONFIRMATORY DISCOVERY TO PROCEED.  I WOULD SIMPLY POSTPONE ANY

3 OR CONTINUE THE HEARING ON THIS MATTER UNTIL AUGUST.  AND THEN

4 PERHAPS INVITE, TEN DAYS BEFORE THE HEARING OR FIVE DAYS BEFORE

5 THE HEARING INVITE A WRITTEN SUBMISSION AS TO WHAT THE POSITION

6 OF THE PARTIES IS IN LIGHT OF THE PASSAGE OF TIME.

7          SO I'M NOT APPROVING OR DISAPPROVING THE SETTLEMENT

8 AT THIS POINT.  I'M SIMPLY CONTINUING THE HEARING.  THAT'S WHAT

9 I WOULD PROPOSE TO DO.  THAT GIVES THE PARTIES ENOUGH TIME TO

10 TAKE A LOOK AND SEE WHERE THEY ARE AND ADVISE THE COURT.

11          DOES ANYBODY HAVE ANY PROBLEM WITH THAT?

12          MS. LOCKER:  NO, YOUR HONOR, ALTHOUGH WE WOULD

13 STILL ASK PERMISSION FOR THE OPPORTUNITY TO SOMETIME DURING

14 THE WEEK OF MAY 14TH, IF THE COMPANY CHOOSES, TO MAKE A

15 SUBMISSION.

16          THE COURT:  SURE.  THAT'S GRANTED.

17          OKAY.  SO LET'S PUT THIS MATTER OVER -- I WILL HAVE

18 A FURTHER HEARING ON AUGUST 24TH, WITH ANY PARTY TO SUBMIT IN

19 WRITING WHAT THEIR POSITION IS BY AUGUST 15TH.  I DON'T KNOW

20 IF WE NEED TWO ROUNDS.  I WOULD SAY MAYBE YOU DO.  I DON'T

21 KNOW.

22          EVERYBODY -- HERE WE GO.  EVERYBODY SUBMIT YOUR

23 POSITION BY THE 15TH, AND IF YOU WANT TO FILE A REPLY, DO SO BY

24 THE 20TH.  OKAY.  SO, YOU KNOW, SO IT'S NOT UNANSWERED.  AND

25 THEN WE'LL HAVE THE HEARING ON THE 24TH AT 10:00.

                                        20

1          THANK YOU VERY MUCH.

```
2          MS. LOCKER:  THANK YOU, YOUR HONOR.

3          MR. FEDERMAN:  THANK YOU, YOUR HONOR.

4          (PROCEEDINGS ADJOURNED.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

25

21

1

2

3                    CERTIFICATE OF REPORTER

4        I, JOAN MARIE COLUMBINI, OFFICIAL REPORTER FOR THE

5 UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY

6 CERTIFY THAT THE FOREGOING PROCEEDINGS IN C 05-2233 CRB,

7 IN RE:  BROCADE COMMUNICATIONS SYSTEMS, INC. DERIVATIVE

8 LITIGATION, WERE REPORTED BY ME, A CERTIFIED SHORTHAND

9 REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION

10 INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND

11 TRUE RECORD OF SAID PROCEEDINGS AS BOUND BY ME AT THE TIME OF

12 FILING.

13        THE VALIDITY OF THE REPORTER'S CERTIFICATION OF SAID

14 TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR REMOVAL FROM THE

15 COURT FILE.

16

17        _____

18             JOAN MARIE COLUMBINI, CSR 5435, RPR

19                 WEDNESDAY, MAY 2, 2007

20

21

22

23

24

25